UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SHELBY ANNE WARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CV-121 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the Court for disposition of plaintiff's Motion for Summary Judgment [Doc. 11] and the defendant's Motion for Summary Judgment [Doc. 17]. Plaintiff seeks judicial review of the decision of the Administrative Law Judge (the "ALJ") denying her benefits, which is the final decision of the defendant, Michael J. Astrue, the Commissioner of Social Security (the "Commissioner").

On September 6, 2006, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging a period of disability beginning on March 31, 1994 [Tr., pp. 84-89]. After her application was denied initially and upon reconsideration, plaintiff requested a hearing. On April 8, 2009, a hearing was held before the ALJ to review the determination of plaintiff's claim [*Id.*, pp. 21-36]. On August 12, 2009, the ALJ found that plaintiff was not disabled because she could perform a significant number of sedentary jobs [*Id.*, pp. 10-18]. On January 29, 2010, the Appeals Council denied plaintiff's request for review and thus, the

decision of the ALJ became the final decision of the Commissioner [*Id.*, pp. 1-3]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**I.     The ALJ's Findings**

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 1999.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 31, 1994 through her date last insured of September 30, 1999. (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following combination of severe impairments: coronary artery disease and osteoarthritis (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift and/or carry 10 pound occasionally, stand and/or walk 2 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday, occasionally climb ladders, ropes and scaffolds, occasionally finger, and frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to atmospheric conditions such as fumes, odors, dust, and gases.

6. Through the date last insured, the claimant was unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on October 1, 1948 and was 50 years old, which is defined as a younger individual age 45-49, on the

>    date last insured. The claimant subsequently changed age category to closely advanced age. (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569 and 404.1568(d)).
>
> 11. The claimant was not under a disability, as defined by the Social Security Act, at any time from March 31, 1994, the alleged onset date, through September 30, 1999, the date last insured (20 CFR 404.1520(g)).

[Tr., pp. 12-18].

## II.  Disability Eligibility

An individual is eligible for benefits if she has financial need and is aged, blind, or under a disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 423(d)(1)(A). An individual shall be determined to be under a disability only if her physical and/or mental impairments are of such severity that she is not only unable to do her previous work, but also because she cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis, summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

The claimant bears the burden of proof at the first four steps. *Id.* The burden of proof shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v.*

4

*Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### III. Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. *Longworth v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, plaintiff bears the burden of proving her entitlement to benefits. *Boyes v. Sec'y of Health & Human Serv.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

### IV. Analysis

On appeal, plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends that the ALJ erred by: (A) failing to find that

5

plaintiff's impairments of bilateral carpal tunnel syndrome, osteomyelitis, bilateral knee pain, and right hip pain constitute severe impairments at step two of the sequential evaluation process; (B) failing to consider the opinion of plaintiff's treating physician; and (C) improperly characterizing plaintiff's age [Doc. 12, pp. 7-11]. The Commissioner contends that substantial evidence supports the ALJ's disability determination [Doc. 18].

    A.    **Step Two of the Sequential Evaluation Process**

Plaintiff argues that the ALJ erred by failing to find that her impairments of bilateral carpal tunnel syndrome, osteomyelitis, bilateral knee pain, and right hip pain constitute severe impairments [Doc. 12, p. 8]. The Commissioner responds that step two is a "de minimus" hurdle, and that the ALJ identified two specific severe impairments for plaintiff, thus allowing the ALJ to continue with the sequential evaluation [Doc. 18, p. 10].

At step two of the sequential evaluation process, the Commissioner determines whether the claimant suffers from a severe impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The U.S. Sixth Circuit Court of Appeals has characterized step two as a "de minimis hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 1997) (internal quotation marks and citation omitted). The purpose of step two is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Once an ALJ determines that a claimant suffers from at least one severe impairment, the ALJ is required to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. An ALJ's failure to find "additional severe impairments at step two does 'not constitute

6

reversible error' . . . when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination." *Nejat v. Comm'r Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

In this case, the ALJ classified plaintiff's coronary artery disease and osteoarthritis as severe impairments through the date plaintiff was last insured [Tr., p. 12]. While plaintiff contends that the ALJ failed to account for her bilateral carpal tunnel syndrome, osteomyelitis, bilateral knee pain, and right hip pain, the ALJ considered plaintiff's non-severe impairments throughout the sequential analysis. For example, when determining plaintiff's residual functional capacity ("RFC"), the ALJ discussed plaintiff's testimony that her "staph infections . . . evolved in osteomyelitis and resulted in amputation of the right index finger." [*Id.*, p. 13]. The ALJ also noted that plaintiff "underwent amputation of the right index proximal interphalangeal joint level due to chronic infectious osteomyelitis." [*Id.*, p. 16]. Furthermore, the ALJ discussed plaintiff's bilateral knee pain. The ALJ stated that plaintiff "complained of medial right knee pain and stated that the catching was painful," yet, "an MRI scan of the right knee was normal." [*Id.*, pp. 15-16]. The ALJ also discussed plaintiff's hip pain by stating that she was "diagnosed with right greater trochanteric bursitis,[1] right knee iliotibial band syndrome, and patellofemoral arthristis." [*Id.*, p. 15].

---

[1]Trochanteric bursitis refers to bursitis of the hip. *See Pease v. Astrue*, No. 0:08-3498-PJG, 2009 WL 4586346, at *5 (D. S.C. Dec. 1, 2000) (noting that "trochanteric bursitis is bursitis of the hip); *Taber's Cyclopedic Medical Dictionary* 2441 (20th ed. 2005) (defining "trochanteric" as "rel[ating] to a trochanter" and that a "trochanter" is "either of the two bony processes below the neck of the femur").

Plaintiff cites a EMG/CG performed in December 1998 as support for her argument that her bilateral carpal tunnel syndrome constitutes a severe impairment. Berta M. Bergia, M.D., noted before the study that plaintiff was experiencing symptoms that were atypical for carpal tunnel syndrome [Tr., p. 458]. After the study, Dr. Bergia noted that the studies showed *mild to moderate* right carpal tunnel syndrome and *very mild* left carpal tunnel syndrome [*Id.*, p. 459]. While the ALJ did not mention this study in his decision, plaintiff failed to indicate at the hearing that she suffered from bilateral carpal tunnel syndrome during the relevant time period. *See Kornecky v. Comm'r of Soc. Sec.*, 74 F. App'x 496, 508 (6th Cir. 2006) (finding that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citations omitted). Moreover, plaintiff's argument is unpersuasive because she points the Court to no evidence that she was treated for bilateral carpal tunnel syndrome or that she suffered work-related restrictions from bilateral carpal tunnel syndrome.

Accordingly, the Court finds that the ALJ did not commit error at step two by failing to classify plaintiff's bilateral carpal tunnel syndrome, osteomyelitis, bilateral knee pain, and right hip pain as severe impairments.

### B.   Treating Physician, Mark Pritcher, M.D.

Plaintiff argues that the ALJ made her RFC determination without considering the opinion of her treating physician, Mark Pritcher, M.D. [Doc. 12, p. 9]. The Commissioner asserts that the ALJ did not commit error because the opinion of Dr. Pritcher, on which

plaintiff relies, was completed nine years after the expiration of plaintiff's insured status [Doc. 18, p. 11].

When determining a claimant's physical RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. *See* 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." *Id.* § 404.1527(a)(2). A medical source is considered a *treating* medical source if the source has provided medical treatment or evaluation, and the source has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1502)).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, the ALJ is required to explain why in the narrative decision. 20 C.F.R. § 404.1527(d)(2); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (concluding that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, the ALJ is required to set forth some basis for rejecting these opinions). The ALJ is also required to

provide in the narrative "good reasons" justifying the weight that the ALJ actually gave to a treating source's non-controlling opinion when reaching the narrative decision. 20 C.F.R. § 404.1527(d)(2); *Blakley*, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order for an ALJ to determine the proper weight to afford a treating source's non-controlling opinion, consideration is given to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). *See* 20 C.F.R. § 404.1527(d)(2).

In this case, there is no dispute that Dr. Pritcher was plaintiff's treating physician prior to the expiration of her insured status on September 30, 1999. The parties, however, dispute the relevance of Dr. Pritcher's November 2008 evaluation, which was conducted more than nine years after the expiration of her insured status. In his 2008 opinion, Dr. Pritcher diagnosed plaintiff with osteoarthritis and hypertension [Tr., p. 1018]. Dr. Pritcher opined that plaintiff could stand for 15 minutes at a time; lift 5 pounds on an occasional basis; that she was unable to lift any weight on a frequent basis; she was able to bend and stoop occasionally, but could never balance; and that plaintiff was only capable of working 1 hour per day [*Id.*].

Evidence "subsequent to the expiration" of a claimant's insured status is generally not relevant to a determination of disability. *Bagby v. Harris*, 650 F.2d 836, 839 (6th Cir. 1981). A claimant must prove that she was disabled on or before her last insured date in order to be entitled to disability insurance benefits. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (claimant must prove that he was disabled before insured status expires). However, evidence dated after the expiration of a claimant's insured status is considered if it establishes that an impairment existed continuously and to the same degree from the date a claimant was last insured. *Johnson v. Sec'y of Health & Human Servs.*, 679 F.2d 605, 607 (6th Cir. 1982).

In this case, the ALJ briefly mentioned Dr. Pritcher in the narrative discussion of plaintiff's RFC. The ALJ stated that:

> Her primary doctor was Dr. Pritchard [sic] and she saw him frequently from 1994-1998 and still sees him. During the period in question, she saw him every two weeks or more . . . Dr. Pritcher treated her on March 11, 1998, and reported that the claimant had complaints of swelling her lower extremities, fatigue, right knee pain, and a sore tongue. On examination, she had peripheral edema and complained of fatigue.

[Tr., pp. 14-15]. The ALJ, however, does not indicate whether Dr. Pritcher's 2008 evaluation of plaintiff's work-related impairments was considered.

The question for the Court becomes whether the ALJ erred by failing to consider Dr. Pritcher's 2008 opinion if the opinion established that an impairment existed continuously and to the same degree from the date plaintiff was last insured. Notably, Dr. Pritcher diagnosed and was treating plaintiff for osteoarthritis during her insured status. While the ALJ noted Dr. Pritcher's treating relationship, and stated that plaintiff saw Dr. Pritcher

11

"every two weeks or more" during the relevant time period, the ALJ does not address whether Dr. Pritcher's 2008 evaluation established that plaintiff's osteoarthritis existed continuously and to the same degree from the date plaintiff was last insured.

In addition, plaintiff's own testimony regarding her limitations during the relevant period is consistent with Dr. Pritcher's 2008 opinion. The ALJ stated that plaintiff testified that:

> During the time period in question, she saw [Dr. Pritcher] every two weeks or more . . . She alleged that she could only lift 5 pounds; stand for 15 minutes without interruption and 1 hour total in an 8-hour workday; walk 15 minutes without interruption and 10 to 20 minutes total in an 8-hour workday; and sit for 15 to 20 minutes without interruption and 2 hours total in an 8-hour workday.

[Tr., pp. 14, 30-31]. As indicated above, plaintiff's testimony concerning her limitations from the relevant period is both consistent and corroborative of the limitations assessed by Dr. Pritcher in 2008. Moreover, the ALJ's residual functional capacity assessment differs significantly from the limitations indicated in Dr. Pritcher's 2008 opinion, which was corroborated by plaintiff's own testimony, yet does not provide a basis for discounting the opinion of Dr. Pritcher.

Therefore, given that Dr. Pritcher examined and consistently treated plaintiff prior to the expiration of her insured status, the ALJ should have considered the extent such limitations, noted in the 2008 evaluation, existed prior to the expiration of plaintiff's insured status. *See Mullins v. Comm'r of Soc. Sec.*, No. 09-13410, 2010 WL 3768068, *7 (E.D. Mich., Aug. 27, 2010) (holding that since "Dr. Fram began treating plaintiff in 2007, before

the expiration of her insured status, the ALJ should have considered whether and to what extent the limitations found by Dr. Fram existed before the expiration of plaintiff's insured status . . .").

Moreover, under certain circumstances, an ALJ must consider whether to contact a treating source for clarification. The applicable Social Security Ruling states:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (finding that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits").

Given that Dr. Pritcher is plaintiff's long-time treating physician and that plaintiff's testimony corroborated Dr. Pritcher's 2008 opinion, the ALJ should have considered contacting him for clarification regarding whether the limitations assessed in 2008 existed during the relevant period of insured status. *See Mullins*, 2010 WL 3768068, at *8 (finding that the "ALJ should have at least considered contacting [plaintiff's treating physician] for clarification" on whether the opined limitations existed before the expiration of plaintiff's insured status).

Accordingly, the Court finds that the ALJ committed error by failing to consider the 2008 evaluation of Dr. Pritcher, plaintiff's treating physician.

## C. The ALJ's Consideration of Plaintiff as a Person Approaching Advanced Age

Plaintiff asserts that on March 31, 1994, the date she alleged disability, she was a "younger individual," and as of the date she was last insured she was a person "closely approaching advanced age." [Doc. 12, p. 10]. The Commissioner responds that "[w]hen the ALJ determined whether or not jobs existed that a person like the Plaintiff could perform, she posed a hypothetical question to the vocational expert, and referred to the medical-vocational guidelines ("the Grid") as a framework for decision-making." [Doc. 18, p. 12].

The Court agrees with the Commissioner's position. Plaintiff was 45 years old on the date of her alleged onset of disability, and 50 years old on the her date last insured. A person is considered a "younger" person between 40 and 45 years of age, and "closely approaching advanced age if they are between 50 and 54 years of age. 20 C.F.R. § 4041563(c), (d). If a person is considered "closely approaching advanced age," an ALJ must consider their "age along with a severe impairment(s) and limited work experience may seriously affect [a claimant's] ability to adjust to other work." *Id.* § 4041563(d).

At the hearing, the ALJ posed a hypothetical question to the vocational expert asking him to consider a person between the ages of 45 and 50. This question presented an accurate description of plaintiff's age during the relevant time period [Tr., p. 37]. Additionally, the ALJ referred to two Grid rules, 201.22 and 201.15 found in 20 C.F.R. Pt. 404, subpt. P, app. 2, both of which describe a person "closely approaching advanced age." [*Id.*, p. 15].

Accordingly, the Court finds that the ALJ properly considered plaintiff's age in the decision.[2]

## V. Conclusion

The Court concludes that the ALJ's determination that plaintiff had the RFC to perform her past relevant work was not supported by substantial evidence. Accordingly, and for the reasons given above, the defendant Commission's motion for summary judgment [Doc. 17] will be **DENIED** and plaintiff's motion for summary judgment [Doc. 11] will be **GRANTED** only to the extent that this case will be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing consistent with this memorandum opinion and accompanying order. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[2]Plaintiff briefly argues that her combination of impairments erodes the sedentary work base to the extent that no jobs exist for her [Doc. 12, p. 10]. Plaintiff bases her argument on Dr. Pritcher's 2008 evaluation and her testimony at the hearing [*Id.*].

The Court has addressed the 2008 opinion of Dr. Pritcher, *supra* in Part B. Plaintiff asserts that the ALJ "ignored" her testimony that she must "frequently elevate her legs" and at most "sit only 2 hours in an 8-hour day." [Doc. 12, p. 10; Tr., p. 31]. The ALJ, however, discussed plaintiff's testimony that she could sit for a total of 2 hours in an 8 hour workday when determining plaintiff's RFC [Tr., p. 14]. In addition, the ALJ discussed plaintiff's testimony that she could stand for 1 hour in an 8 hour workday and that she could only walk 10 to 20 minutes total in an 8 hour workday [*Id.*]. While the ALJ found plaintiff's testimony was not credible, she did not "ignore" plaintiff's testimony.

Plaintiff does not challenge the ALJ's credibility determination, and therefore, the Court will not consider whether the ALJ's credibility determination was supported by substantial evidence.